**James Andrew ECHOLS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 35890.

Court of Criminal Appeals of Texas.

June 19, 1963.

Rehearing Denied Oct. 16, 1963.

Sam Hoover, Houston (Counsel by Appointment), King C. Haynie, Houston (Counsel On Appeal Only, by Appointment), for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and Jon N. Hughes, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The appellant was jointly indicted with three other men for the offense of rape. A severance was granted, and the appellant was separately tried and convicted of rape and his punishment was assessed at death.

The prosecutrix and her white male companion, Marion Jenkins, were sitting in Jenkins' Falcon automobile near a street intersection close to her residence, about 9 p. m., when Lawrence O'Conner and Willie James Rivers, co-indictees of the appellant, came up beside the Falcon. O'Conner, grabbing Jenkins, placed a knife at his neck. At that time, Rivers appeared on the other side of the Falcon, with a long knife in his hand. Both O'Conner and Rivers got into the Falcon and after Rivers had driven a short distance he stopped and the prosecutrix and Jenkins moved to the rear seat. During the move, O'Conner took Jenkins' watch and placed it in his pocket. While

Rivers was driving, O'Conner signalled with his hat toward a white Plymouth, which then followed them. The Falcon was soon stopped behind a schoolhouse and O'Conner and Rivers got out. The appellant and Rufus Freeman, another co-indictee, and Charles Phillips, a companion, approached the Falcon. The appellant kicked Jenkins in the "gut," and began searching him while the others searched the Falcon. Jenkins then got back into the Falcon, and appellant placed his knife against Jenkins' neck and said: "I'm going to kill you, you white s— of a b———."

After complaining that he was about to vomit, Jenkins got out of the Falcon and started running. He was overtaken and, after a violent struggle, he escaped and notified the police.

While testifying, the prosecutrix, eighteen years of age, identified O'Conner and Rivers as the two men who first came to the Falcon, and her testimony was substantially the same as that of the witness Jenkins. She testified that she first saw the appellant on the school yard when he was standing beside the Falcon with a knife. Following the escape of Jenkins, she was blindfolded, placed on the floorboard of the Falcon and, after traveling a short distance, she was transferred to the Plymouth and taken to a weed patch in a secluded area. Still blindfolded, with a knife at her neck, her dress was removed and she was forced to lie down on her dress, which had been placed on the ground. Her undergarments, other than her brassiere, were also removed. With her hands held over her head and her legs held by others, the assailants had four, five, or more completed acts of sexual intercourse with her without her consent. Then they gagged her, tied her wrists and ankles, and "stuck something" in her vagina, and fled. In a short time she removed the blindfold regained her freedom, and notified the police. Later the same morning she identified the appellant and four other men as those who had assaulted her.

The prosecutrix identified several articles which fell from her purse at the scene, and also her shoes, which were found near the scene of the crime. The keys to the Falcon were found by the officers at a place where the appellant told them they had been thrown by him. The witness testified that in the conversation leading to the recovery of the car keys, "* * * he (appellant) stated all of them had raped the lady."

The physician who examined the prosecutrix testified that he found live sperm in her vagina and the examination revealed findings compatible with sexual intercourse. Seminal stains were found on her panties. There was evidence of multiple scratches on her body.

In a written statement introduced by the state, the appellant admitted committing the offense charged, and his statement substantially corroborates the evidence offered by the state.

The appellant testifying in his own behalf, admitted signing the written statement but stated that it was obtained by threats and force and was not voluntarily made and signed by him. He further testified that he was drinking heavily on the afternoon and night in question. He stated that he remained in the car and was asleep at the time the others committed the offense, which he first learned about on the way home. On his arrival home, he was told that the officers had been there asking for him. They soon returned and took him to the police station.

The involuntary character of the written statement of the appellant was submitted to the jury by the court in his charge.

The court also charged the jury on the law applicable to principals.

Appellant contends that the trial court erred in admitting in evidence the statement made by O'Conner when he grabbed Jenkins around the neck, while Jenkins was seated in the Falcon, that: "We just robbed a

place, keep your mouth shut and you won't get hurt."

Appellant's objection that such statement was hearsay and outside his presence was overruled. To such ruling the appellant excepted.

The written statement of the appellant introduced in evidence states, in part, that he and O'Conner and their companions had been talking and thinking about robbing someone to get some money, when they saw a man and a woman seated in a parked Falcon. They then parked around the corner from the Falcon because they thought about robbing them and using the Falcon to rob a service station. O'Conner and Rivers went to see about the Falcon. Shortly thereafter they drove by in the Falcon with a man and woman in the back seat, and O'Conner motioned for appellant and companions to follow, which they did.

In the conversation between the appellant and the officers which led to the recovery of the shoes of the prosecutrix and the keys to the Falcon, appellant also stated that when they first saw the Falcon with the man and woman in it they decided to rob them and take the car.

■ The words and acts of the appellant and his co-actors, as revealed by the evidence, show that the statement complained of was admissible against the appellant even though said in his absence. 4 Branch's Ann.P.C.2d 605, Sec. 2243; Riddle v. State, 150 Tex.Cr.R. 419, 201 S.W.2d 829. In addition, the statements were admissible as part of the res gestae.

Complaint is also made of a statement by Rivers when he had trouble starting the motor of the Falcon, at the time he and O'Conner first took possession of it. This statement was made at the time "I (Jenkins) asked if he (Rivers) wanted me to help start it and he told me to shut my damn mouth * * *" Appellant objected to any conversation on the part of Rivers because it was outside of his hearing.

The disposition of the statement complained of in the previous contention is applicable and controlling here, and no error is presented.

■ It is contended that the trial court erred in admitting in evidence two photographs of the prosecutrix which were made after the commission of the offense charged. The appellant objected on the grounds that they were not material to any element of the offense and did not connect him with it and were inflammatory and prejudicial.

One photograph showed marks on one wrist, where she had been tied. The other photograph showed scratches on her back. The two pictures were not inflammatory and were admissible in evidence under the rule announced in Richardson v. State, 159 Tex.Cr.R. 595, 266 S.W.2d 129.

■ Error is urged on the ground that the state, while cross-examining the appellant, asked if he had been handled by the police as a juvenile and if he would like for the juvenile records to be brought into court. These questions were not answered, the objections thereto were sustained, and the court responded to appellant's only request that the jury be instructed not to consider the questions. No objections were made to the questions as to whether he had been in jail in 1959 and 1960, at which time he was of juvenile age. Further, in support of his application for a suspended sentence, the appellant testified that he had never been convicted of a felony or a misdemeanor involving moral turpitude and that, before his arrest in this case, he had never been arrested or placed in jail. The refusal to grant a mistrial in light of the record was not reversible error.

■ The evidence is sufficient to support the conviction, and no reversible error appearing, the judgment is affirmed.

Opinion approved by the Court.